FILED

IN CLERK'S OFFICE

U.S. District Court E.D.N.Y.

07/12/2022

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

EDITH COOPER,

                              Plaintiff,

        -against-

ADA S. COOPER,

                              Defendant.

**MEMORANDUM & ORDER**
**19-CV-3025 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Edith Cooper brings this action against Defendant Ada S. Cooper for alleged breach of a loan agreement. Defendant moves to dismiss for failure to state a claim, or in the alternative for summary judgment, under Federal Rules of Civil Procedure 12 and 56. For the following reasons, Defendant's motion is DENIED in part and GRANTED in part.

**I.    BACKGROUND**

The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the other admissible evidence submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits Plaintiff, as the non-moving party, if her assertion is supported by evidence in the record. All evidence is construed "in the light most favorable to the non-moving party" with "all reasonable inferences [drawn] in its favor." *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).[1]

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

1

For the purposes of the motions to dismiss, the court considers only facts alleged in the Amended Complaint as well as documents attached to it or incorporated by reference, all of which the court accepts as true in that posture. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Plaintiff and Defendant are sisters, once very close but now estranged. (Am. Compl. ¶ 1 (Dkt. 42); *see also* Pl.'s Rule 56.1 Statement Response ("Pl.'s 56.1") (Dkt. 55-29) ¶ 1.) Plaintiff is a member of the board of directors of Amazon and PepsiCo, and a former executive at Goldman Sachs. (Am. Compl. ¶ 8; Pl.'s 56.1 ¶ 5.) Defendant is a former lawyer who received her J.D. from Harvard Law School and practiced for 14 years before changing careers and becoming a dentist. (Am. Compl. ¶ 9; Pl.'s 56.1 ¶ 3.) Over the years, Plaintiff both loaned and gifted money to Defendant on several occasions in various amounts. (Am. Compl. ¶ 1; Pl.'s 56.1 ¶¶ 10-11.)

Beginning in 2014, Plaintiff and her husband began urging Defendant to sign a loan agreement memorializing a combination of three of the sums Defendant had previously received from Plaintiff. (Am. Compl. ¶¶ 32-43; Pl.'s 56.1 ¶¶ 10-13.)

The first of the sums memorialized in the agreement was a $220,000 "Marital Loan" extended by Plaintiff to Defendant and Defendant's then-husband between 2002 and 2003, which Defendant has acknowledged as a loan and for which the parties signed a promissory note. (Am. Compl. ¶¶ 12-13; Pl.'s 56.1 ¶ 17.) In 2013, as part of Defendant's divorce proceedings, a New York Supreme Court determined that $149,700 of the Marital Loan remained unpaid and assigned repayment to Defendant. (Am. Compl. ¶ 16; Pl.'s 56.1 ¶ 19.) Defendant received the other two sums from Plaintiff in 2014: $87,000 in February and $185,000 in October. (Am. Compl. ¶¶ 19, 25; Pl.'s 56.1 ¶ 22.) All or nearly all of this money was used by Defendant to settle the costs and

attendant legal fees of her arduous divorce. (Am. Compl. ¶¶ 32-43; Pl.'s 56.1 ¶ 22.)

After weeks of arguments between Plaintiff, Defendant, and Plaintiff's husband over the amount to be reflected in the agreement memorializing these alleged loans, the parties settled on a total sum of $414,300, with a three-year maturity term and an annual interest rate of 0.38%. (Am. Compl. ¶¶ 32-34; Pl.'s 56.1 ¶¶ 34-43.) The parties had previously agreed that Defendant would repay whatever money she owed Plaintiff out of her share of their then-living father's estate. (Am. Compl. ¶ 21; Pl.'s 56.1 ¶ 23.) To reflect that mutual understanding, an extension feature was discussed and added to the loan agreement so that it could be renewed at the *de minimis* interest rate until such time as Defendant's proceeds from the estate were sufficient for repayment of the principal. (Am. Compl. ¶¶ 37-38; Pl.'s 56.1 ¶ 44; *see also* Loan Agreement (Dkt. 42-1) at ¶ 5.) Defendant sent drafts of the agreement for review to both a lawyer and an accountant, and the parties finally agreed to and signed the document in or around May 2015. (Am. Compl. ¶¶ 39, 43.)

The loan agreement was intended to recognize a past benefit conferred on Defendant (the borrower) by Plaintiff (the lender), and not to create an additional or future obligation. Both Plaintiff and Defendant explicitly identified this agreement to each other and to others as memorializing prior dealings during the negotiation, execution, and subsequent attempted enforcement of the agreement – and Defendant has repeatedly stated that she understood the agreement as a memorialization, not expecting to receive any further money from Plaintiff. (*Id.* ¶¶ 3, 34, 36, 38, 42, 45, 52; *see also* Pl.'s 56.1 ¶¶ 45, 49.)

Their ultimate signed agreement, however, contained a mistake characterizing their relationship in the future tense, stating in its first paragraph "Lender promises to loan" instead of "Lender has

loaned." (Am. Compl. ¶¶ 35, 53-54; *see also* Loan Agreement ¶ 1.)
That paragraph provided the following:

> Lender promises to loan the principal amount (the
> "Loan") of four hundred fourteen thousand, three hun-
> dred dollars ($414,300) to Borrower, and Borrower
> promises to repay this principal amount and all accrued
> interest to Lender, at 535 North Street, Greenwich CT
> 06830, or at such other address as may be provided by
> Lender to Borrower in writing, with interest payable on
> the unpaid principal balance at the rate of .38 percent
> per annum, calculated yearly in arrears.

(Loan Agreement ¶ 1.) Neither party noticed this mutual mistake
as to the temporal nature of the agreement, and both parties con-
tinued to believe that money had been extended by Plaintiff to
Defendant in the past, not that any money would be extended in
the future. (Pl.'s 56.1 ¶¶ 43, 45; *see also* Dep. of Edith Cooper (Ex.
2) (Dkt. 58-1) at 80:13-18; Aff. in Opp'n of Edith Cooper (Dkt.
55-27) ¶ 40; Decl. of Ada S. Cooper (Dkt. 54-22) ¶ 44; Dep. of
Ada S. Cooper (Dkt. 55-2) 279:18-280:24.) The agreement also
contained a merger clause, stating that "This Agreement consti-
tutes the entire agreement between the parties and there are no
further items or provisions, either oral or otherwise." (Loan
Agreement ¶ 13.)

In January 2016, Defendant made her first interest payment un-
der the agreement of $1,574.34, which represented the agreed-
upon 0.38% of the loan's full $414,300 principal. (Am. Compl.
¶ 46; *see also* Ex. N to Viducich Decl. (Ex. N) (Dkt. 54-15) at 1.)
The parties dispute whether further interest payments were
made, with Defendant asserting that she made payments of the
same amount in at least January 2017 and January 2018, and
Plaintiff acknowledging only one late payment in August 2018.
(Am. Compl. ¶ 46; Pl.'s 56.1 ¶¶ 52, 54, 58, 60-62; Ex. N at 1.)
The sisters' father died in January 2016, and while the parties

now dispute whether Defendant has received sufficient funds from his estate to trigger the extension feature of their agreement, it is undisputed that the principal on the loan had not been repaid as of January 2018. (Am. Compl. ¶¶ 49-50; Pl.'s 56.1 ¶ 59.) In May 2019 Plaintiff brought this action to enforce the agreement, demanding repayment of $414,300, plus interest. (*See generally* Compl. (Dkt. 1) at 6.)

In 2020, the court issued a Memorandum & Order granting Defendant's motion to dismiss and holding the parties' loan agreement unenforceable because its plain text described future, rather than past, loans – even though no future loans were in fact ever contemplated. (*See* June 29, 2020 Memorandum & Order (Dkt. 29).) In February 2021, Plaintiff amended her complaint seeking to reform the "Unenforceable Agreement," or alternatively for damages under one or more of the equitable doctrines of promissory estoppel, unjust enrichment, or money had and received. (*See* Am. Compl. at 11, 13-15.) After the completion of discovery, Defendant now moves to dismiss Plaintiff's claims for reformation, promissory estoppel, unjust enrichment, and money had and received. In the alternative, she seeks summary judgment on the same claims.

## II.   DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### A.   Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), the Amended Complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v.*

*Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). In evaluating whether the claim meets the plausibility standard, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies, and which are integral to the complaint." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). The court then liberally construes these facts and draws all reasonable inferences in Plaintiff's favor. *New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

Alternatively, Defendant moves for summary judgement under Rule 56, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Finally, Defendant has asserted affirmative defenses of the statute of frauds and the statute of limitations under Fed. R. Civ. P. 8(c)(1). In asserting affirmative defenses, Defendant bears the burden of establishing a *prima facie* case that Plaintiff has violated the statutes, and the burden then shifts to Plaintiff to rebut.

### B.  Discussion

1.  The Reformation Claim

*a.  Motion to Dismiss*

Defendant moves to dismiss Plaintiff's reformation claim on three bases, arguing that it should not go forward because (1) it would effectively nullify New York General Obligations Law ("GOL") § 5-1105; (2) it would conflict under the circumstances with other common law doctrines; and (3) Plaintiff fails to allege a mutual mistake of fact. For these reasons, Defendant argues, Plaintiff's Amended Complaint fails to state a claim.

The court first addresses the threshold question of whether the common law doctrine of reformation is available to satisfy New York's statutory framework for enforcing contracts premised upon past consideration. Reformation is

> not . . . for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties.

*George Backer Mgmt. Corp. v. Acme Quilting Co.*, 46 N.Y. 2d 211, 219 (1978). Past consideration generally "is no consideration and cannot support an agreement because the detriment did not induce the promise." *Greenberg v. Greenberg*, 646 F. App'x 31, 32 (2d Cir. 2016) (summary order) (applying New York common law). However, New York law provides that:

> A promise in writing and signed by the promisor or by his agent shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed.

GOL § 5-1105.

Here, Plaintiff's Amended Complaint seeks to reform the parties' Unenforceable Agreement so as to satisfy GOL § 5-1105. But Defendant argues, in essence, that allowing Plaintiff to do so would void or "nullify" the GOL requirement. Because the written agreement has been held unenforceable, the argument goes, it would be anomalous to use a common law doctrine (reformation) in order to create an implied contract that would satisfy a statute which itself expressly requires an enforceable writing.

But this is in fact the opposite of what Plaintiff requests. Plaintiff seeks reformation not to nullify, but rather to apply GOL § 5-1105. As this court previously ruled, the reason the Unenforceable Agreement is unenforceable is that "the agreement, by its terms, expressly contemplates a *future* loan." (*See* June 29, 2020 Memorandum & Order (Dkt. 29) at 5.) And because the Unenforceable Agreement contemplates a future and not a past loan, it does not implicate GOL § 5-1105, since GOL § 5-1105 applies only to contracts that depend upon past consideration.

To be sure, reformation cannot be used to supply terms to a contract to which the parties did not agree, or to cure an otherwise invalid contract. *See Citibank, N.A. v. Morgan Stanley & Co. Intern., PLC*, 797 F. Supp. 2d 254, 264 (S.D.N.Y. 2011) ("Reformation of contract is not a matter of resolving an ambiguity in a contract but rather of supplying what the parties clearly intended to include but inadvertently omitted."). If one of the requirements of GOL § 5-1105 had been unmet (for example, if the promise had not been in writing or signed by the promisor or an agent; if the consideration had not been expressed in the writing, or not proved to have been given or performed; or if the consideration would not have been valid but for the time when it was given or performed), then reliance on the doctrine of reformation to cure such a shortcoming would be beyond the equitable power of the court. But GOL § 5-1105 does not require

that the consideration for a contract be in the past. To the contrary, the statute provides that the temporal nature of the consideration is *not* a requirement for a valid contract.

Reformation in this case is an example of parties correcting their written document to reflect the preexisting intention and understanding of the parties to commemorate a past loan, as permitted by statute. Reformation does not "nullify" GOL § 5-1105 because the court must still apply the statute to decide whether the contract, reformed to correctly reflect the parties' intent, measures up to its other requirements. The court therefore rejects this basis for dismissing the reformation claim.

Second, Defendant argues that other courts have declined to permit reformation when doing so would conflict with other common law doctrines. Defendant cites three cases, two concerning the rule against perpetuities in property law (*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co*., 607 F. Supp. 2d 600, 602-04 (S.D.N.Y 2009) and *Symphony Space v. Pergola Props*., 88 N.Y.2d 466, 484-85 (1996)), and one concerning the parol evidence rule (*Intl. Multifoods Corp. v. Commercial Union Ins. Co.*, 98 F. Supp. 2d 498, 506-07 (S.D.N.Y. 2000)). None of these cases apply to reformation, however. Each may be distinguished from this case because of the substance and purpose of the legal doctrines they apply. Both the rule against perpetuities and the parol evidence rule are meant to *defeat* the intentions of the parties, even when clearly expressed. Those doctrines share a common purpose that is directly at odds with that of the equitable doctrine of reformation. Whereas reformation seeks to amend a contract to comport with the intent of the parties, the parol evidence rule and the rule against perpetuities are designed to protect a contract *from* the intention of the parties. It makes sense, then, to avoid applying the reformation doctrine in those circumstances, but not in these.

Finally, Defendant alleges that Plaintiff cannot allege a mutual mistake of fact. For a reformation claim to succeed, it must be based on a mistake of fact and not of law. "It is well settled in the federal courts [as it was at common law] that equity will not grant reformation for a mistake of law." *Greenberg v. Arsenal Bldg. Corp.*, 50 F. Supp. 700, 703 (S.D.N.Y 1943). "To prove mutual mistake of fact, plaintiffs must allege that both parties assumed a certain state of facts to exist at the time of the making of the contract and that assumption was erroneous." *de la Gueronniere v. Simon*, No. 97-CV-4813 (DC), 1998 WL 226199, at *3 (S.D.N.Y. May 4, 1998), *aff'd*, 166 F.3d 1199 (2d Cir. 1998).

Here, the court concludes that the parties' mistake is one of fact, and not of law. Specifically, the parties mistakenly believed the Unenforceable Agreement (which they obtained from the website legalcontracts.com) memorialized past consideration already conferred by Plaintiff on Defendant.[2] So the Unenforceable Agreement is not a failed attempt to meet the requirements of a law misunderstood or unknown to the parties, as in the cases Defendant cites, but rather akin to a clerical, factual error. Reformation is therefore proper to cure this mutual mistake.

Because the court rejects all three of Defendant's arguments, her motion to dismiss the reformation claim is DENIED.

> b. *Motion for Summary Judgment*

Alternatively, Defendant argues that even if the court declined to grant her motion to dismiss Plaintiff's reformation claim, she should still be entitled to summary judgment on it. The court disagrees.

---

[2] This is true even though the parties now dispute *the amount* they had intended to memorialize.

The reformation doctrine evolved in equity because an action at law afforded no relief against an instrument secured by fraud or as a result of mutual mistake. *See* 5 Holdsworth, History of English Law, 292-93, 327-28 (1945). But to overcome the heavy presumption that a deliberately prepared and executed written instrument manifested the true intention of the parties, New York courts have required "evidence of the highest character." *Christopher & Tenth St. R. R. Co. v. Twenty-Third St. Ry. Co.*, 149 N.Y. 51, 58 (1896). That standard must be especially demanding when a litigant seeks to invoke the power of the court not merely to sever the contractual relationship between the parties, but, as here, to continue that relationship in a modified form. Furthermore, for the court to reform a contract, there must be evidence of this strength "not only that mistake . . . exists, but [also] what was really agreed upon between the parties." *Collins v. Harrison-Bode*, 303 F.3d 429, 435 (2d Cir. 2002).

Plaintiff seeks "reformation of the Loan Agreement to make clear that it applies to past consideration Plaintiff extended to Defendant, in the amount of $414,300." (Am. Compl. at 15.) The court previously identified "the operative language of the agreement" to be the term that Plaintiff "*promises to* lend" to Defendant. (*See* June 29, 2020 Memorandum and Order at 5.) At trial, Plaintiff would seek to prove the parties' intentions such that this single phrase would be reformed from "promises to lend" to "has lent."

In seeking summary judgment on the reformation claim, Defendant emphasizes that she believed the amount of the loan to be incorrect, even though she apparently negotiated, reviewed, discussed, signed, and paid interest on the full $414,300 sum without objection. Defendant argues that, because the parties (apparently unbeknownst to Plaintiff) were not in agreement upon the amount that had been loaned, the contract is not eligible for reformation. But the *amount* of the loan is not the subject of Plaintiff's reformation claim. Although Defendant's disputed

understanding of the amount owed would certainly have been relevant to any effort to reform the amount listed in the loan, Plaintiff seeks only to reform the *temporal* error the parties made such that the contract would again be enforceable. None of the other provisions need be reformed to satisfy Plaintiff's claim.

Given that narrow question, the jury must only decide whether the change from "promises to lend" to "has lent" would correctly memorialize the intent of both of the parties. In this posture, interpreting the facts most favorably to Plaintiff, it is clear that a reasonable jury could conclude that both parties intended to memorialize a past loan. Defendant stated in her deposition, "I did not expect that they would be giving me money in the future," and again, "As I've said before, I didn't expect they would lend it in the future." (Dep. of Ada S. Cooper at 224:12-16, 240:22-241:7.) Emails from Plaintiff, Defendant, and Plaintiff's husband all suggest they understood the agreement to be retrospective, including an email from Defendant to her lawyer in which she identified the sum (which she had changed before sending) to memorialize a previous loan. (Def.'s Rule 56.1 Statement ("Def.'s 56.1") (Dkt. 54-23) ¶ 49; Ex. E (Dkt. 54-7) at 3; Ex. I (Dkt. 54-11); Dkt. 57, at 7.) Defendant never sought any money from Plaintiff after signing the agreement, and Plaintiff never attempted to provide any money to Defendant after signing the agreement.

From this evidence the court easily concludes that a reasonable jury could find the parties intended their agreement to memorialize a past loan. Defendant's motion for summary judgment on the reformation claim is therefore DENIED.

### 2. The Equitable Claims

Although the court has denied Defendant's motion to dismiss and motion for summary judgment on Plaintiff's reformation claim, the court has not been asked to actually grant reformation of the Unenforceable Agreement. Even if Plaintiff were to file her own

motion for summary judgment, and the court were to grant it, there would still remain questions of (1) whether that reformed contract is enforceable, and (2) whether the reformed contract was breached. Perhaps cognizant of the uncertainty of these issues, Plaintiff pled several alternative equitable claims of promissory estoppel, unjust enrichment, and money had and received. They could be tried together with the reformation claim. Defendant moves to dismiss each claim, or again in the alternative for summary judgment.

### a. *Promissory Estoppel*

#### i.   <u>Motion to Dismiss</u>

Defendant first moves to dismiss Plaintiff's promissory estoppel claim. She argues that Plaintiff's claim (1) does not allege sufficient facts; (2) is barred by the statute of frauds and fails to allege an "unconscionable injury"; and (3) is barred by the statute of limitations.

New York law requires a claim for promissory estoppel to state three elements: (1) A clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance. *See R.R. Donnelley & Sons Co. v. Marino*, No. 20-CV-06722 (EAW), 2021 WL 4441515, at *5 (W.D.N.Y. Sept. 28, 2021). "A plaintiff may utilize the doctrine of promissory estoppel in two situations: (1) to enforce a promise in the absence of bargained for consideration; and (2) to provide relief to a party where the contract is rendered unenforceable by operation of the Statute of Frauds." *Id.*

Plaintiff alleges four promises that might give rise to a promissory estoppel claim: a 2015 promise to repay $414,300 for loans previously extended, as well as three individual promises that Defendant made to repay $149,700, $87,000, and $185,000 in exchange for loans in those amounts from Plaintiff. There are thus two parallel theories of Plaintiff's promissory estoppel claim:

one based on an alleged oral agreement that parallels the terms of the written Unenforceable Agreement of 2015, and the other based on the original three individual promises which the Unenforceable Agreement sought to consolidate and memorialize. The court examines each in turn.

First, the court finds that Plaintiff has successfully pleaded the three elements of a promissory estoppel claim under her first theory of her case. As to the first element, Plaintiff claims that Defendant made a clear and unambiguous promise to repay $414,300 by January 2018. (Am. Compl. ¶¶ 2, 43, 67.) As to the second prong, Plaintiff next asserts that she reasonably relied upon this promise both by lending the money to Defendant in the first place, and by forbearing from seeking immediate repayment of funds previously conferred. (*Id*. ¶ 68.) Finally, Plaintiff contends that the resulting loss of this substantial sum of money constitutes her injury. While a jury may ultimately reject these claims, and while this court may still find them so unsupported by facts as to fail the standard of summary judgment, they at least survive Defendant's motion to dismiss.

Second, the court similarly finds that Plaintiff has sufficiently stated a claim on her second theory as well. Plaintiff has identified each of the three individual promises allegedly made by Defendant as a promise to repay the Marital Loan in December of 2013, a promise to repay the $87,000 loan made in February 2014, and a promise to repay the $187,000 made in October 2014. (*Id*. ¶¶ 17, 19, 24.) Plaintiff alleges each of these promises were accompanied by an understanding that the money would be paid from Defendant's share of her inheritance from their father's estate. (*Id.* ¶¶ 21, 38.) To meet the second prong of the promissory estoppel analysis, Plaintiff once again asserts that she reasonably relied upon these three promises by extending the monies in the first place, and by forbearing from seeking immediate repayment. (*Id*. ¶ 68; *see also* Dep. of Edith Cooper at 49:10-

21, 50:7-12, 53:3-9, 71:21-73:7.) Finally, Plaintiff again contends that the resulting loss of this sum constitutes her injury. (*Id.* ¶ 69.)

Because Plaintiff addressed each of the three elements of the promissory estoppel claims and plausibly alleged facts that, if true, would satisfy those elements, Defendant's motion to dismiss is DENIED on the basis of alleging sufficient facts.

ii.   Motion for Summary
      Judgment

The court next examines each of Plaintiff's theories as to whether there are facts sufficiently in dispute to survive Defendant's motion for summary judgement.

On the first theory, the court finds that no reasonable jury could conclude Plaintiff reasonably relied upon Defendant's alleged promise to repay a combined sum of $414,300. The facts are undisputed that Defendant's alleged promise, made in late 2014 or in 2015, could only have been intended as a memorialization of past promises, and was not then relied upon by Plaintiff in loaning any additional funds. (Pl.'s 56.1 ¶¶ 45, 49; Dep. of Ada S. Cooper at 224:12-16, 240:22-241:7.) The only action that Plaintiff is alleged to have undertaken in reliance on this promise (divorced from the previous three alleged promises to repay the constituent loans at the time they were extended) is that of forbearing from seeking immediate repayment of the already-made loans. (*Id.* ¶ 68.) But Plaintiff has stated, and Defendant agrees, that the two agreed that Defendant would repay the loans out of the proceeds from their father's estate, and their father had not yet died. (*Id.* ¶¶ 21, 38; *see also* Pl.'s 56.1 ¶ 27.) Therefore, by the terms of the agreement that Plaintiff describes in the Amended Complaint, any forbearance was illusory. She simply did not have the right or ability to seek the "immediate repayment" she alleges to have foregone. Without any reasonable reliance, Plaintiff's first theory fails and the court would award summary judgment.

Alternatively, however, Plaintiff's second theory alleges that Defendant made three individual promises to repay each of the three constituent loan amounts before those loans were extended (in 2002, February 2014, and October 2014, respectively) and that Plaintiff then loaned money to Defendant in reliance on *those* promises. (Am. Compl. ¶¶ 17, 19, 24.) The court therefore examines the undisputed facts surrounding the three amounts (first the "Marital Loan" of $149,700, and then the two subsequent alleged loans of $87,000 and $185,000) individually, separated as they are by time and circumstance.

For the Marital Loan, Plaintiff adduces sufficient facts to permit a jury to find that Defendant made a promise to repay this loan. Defendant signed a promissory note for the loan. (Pl.'s 56.1 ¶ 17.) Defendant was ordered by the Supreme Court of the State of New York to pay the $149,700 sum to Plaintiff. (Ex. G (Dkt. 54-9) at 80.) And Defendant has acknowledged the loan numerous times in the evidence and in her deposition. (*See, e.g.*, Ex. T (Dkt. 54-21); Decl. of Ada S. Cooper at ¶¶ 11, 19, 49; Dep. of Ada S. Cooper (Dkt. 55-2) at 38:12-15.)[3] As to this amount then, the court DENIES Defendant's motion for summary judgment.

---

[3] If anything, the strength of the factual record raises a separate but related question as to whether Plaintiff's claim for promissory estoppel can survive its own persuasive evidence, because claims in quasi-contract generally cannot coexist with an express, valid contract. See *Karmilowicz v. Hartford Fin. Servs. Group*, 494 Fed. Appx. 153, 158. The court nonetheless concludes that it can, because promissory estoppel may be pled in the alternative where the validity of the contract is disputed. Defendant has attempted to cast doubt on the validity of the Marital Loan contract for $149,700, arguing that, "This obligation is legally unenforceable, does not belong in a lawsuit against Defendant, and otherwise should be dismissed." (Pl. Mem. of Law (Dkt. 54) at 7.). Defendant cannot assert the contract is unenforceable on one hand and that the claim for promissory estoppel should be dismissed because of the existence of a valid contract on the other. Since Defendant has reserved her right to contest the Marital Loan,

Turning to the two other sums of $87,000 and $185,000, Plaintiff presents an email exchange between Defendant and Plaintiff's husband between May 1 and May 2, 2014, at the time when Plaintiff extended the $87,000 sum to Defendant. In these emails, Defendant acknowledges that "the balance on *the other loan*, according to the court's decision at least, is $149,000." (Ex. T (Dkt. 54-21) at 1 (emphasis added).) Plaintiff points repeatedly to this email as an acknowledgement that Defendant accepted the $87,000 as a loan and not a gift. Although other explanations exist for this use of language by Defendant, a rational trier of fact might accept Plaintiff's version of the facts.[4]

Additionally, Plaintiff argues that the Unenforceable Agreement itself, as well as the fact of its negotiation and partial performance, are the most compelling evidence that Defendant had previously promised to repay the money extended to her. Defendant did not object to (and in fact negotiated for) the total of $414,300 enumerated in the agreement, knowing that it reflected the (slightly reduced) sum of the $87,000 and $185,000 she had been extended in 2014. Indeed, the agreement was constructed specifically to avoid the appearance of any of these sums being construed as "gifts." (Def.'s Rule 56.1 Statement Response ¶¶ 34-40; *see also* Ex. I (Dkt. 54-11) at 3.) After consulting with both a lawyer and an accountant, and being assured by both (albeit mistakenly) that the agreement would be effective, she signed it. (Ex. E (Dkt. 54-7) at 1-2; *see also* Def.'s 56.1 ¶¶ 49-50.) Defendant made at least one interest payment on the full $414,300 total and asserts that she made others as well. (Def.'s

---

Plaintiff must also be permitted to preserve her promissory estoppel claim as an alternative to an enforcement of the loan obligation.

[4] To begin the email exchange, Plaintiff's husband said, "Ada, Edith and I just wired you $20,000 to cover your father's expenses in the short term. Our understanding is that this is a loan against your father's estate." (Ex. T (Dkt. 54-21) at 1.) It could have been this loan, and not the sum of $87,000, which Defendant implicitly recognized in her response.

56.1 ¶¶ 51-64.) A rational trier of fact might well review these facts and be persuaded that only a person who had actually accepted $414,300 in loans and had promised to repay that amount previously would behave in this manner, signing loan agreements and making interest payments, particularly if that person had a degree from Harvard Law School. Defendant presents an alternative view of the evidence, namely that her actions simply stem from an effort to avoid conflict either between herself and Plaintiff or between Plaintiff and Plaintiff's husband. (Def.'s 56.1 ¶¶ 47, 58.) This dispute over how to interpret the evidence is the responsibility of a trier of fact and should not be resolved on a motion for summary judgement. Thus, as to the second and third amounts, the court DENIES Defendant's motion for summary judgment.

In summary, the court concludes that Plaintiff's promissory estoppel claim can survive only when rooted in the three individual promises to repay the constituent loans that Plaintiff claims to have extended from 2002-2014. But the promissory estoppel claim fails when it is based on Defendant's singular promise to repay $414,300 previously loaned. The facts on the individual promises being in sufficient genuine dispute, Defendant's motion for summary judgment is DENIED.

iii.    Affirmative Defenses

Though the court has thus far declined to grant Defendant's motion to dismiss the promissory estoppel claims, and has denied Defendant's motion for summary judgment on them, it must still consider Defendant's affirmative defenses arising under the statute of frauds and statute of limitations.

*Statute of Frauds*

The applicable New York statute of frauds provides that

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing,

and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.

G.O.L. § 5-701(a).

Courts have repeatedly held that "this statute must be construed so that its effect is limited to those contracts which, by their terms, cannot possibly be fully performed within one year." *Kubin v. Miller*, 801 F. Supp. 1101, 1120 (S.D.N.Y. 1992) (citing *D&N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y. 2d 449, 454 (1976)). The statute of frauds governs loans which the borrower does not have a legal right to repay within one year, agreements which one party can terminate but the other can escape only through breach, and agreements which remain in place in perpetuity unless they are breached. "The requirement means that full performance by all parties must be possible within a year, but it does not matter how improbable it may be that performance will actually occur within that time frame." *Cacchillo v. Insmed, Inc.*, 551 Fed. Appx. 592, 594-95 (2d Cir. 2014).

With this one-year limit for oral agreements in mind, Defendant first argues that "according to plaintiff the parties' oral agreement contemplated a three-year term with annual interest payments. The oral agreement was, therefore, within the scope of, and rendered void by, G.O.L. § 5-701(a)." (Def.'s Mem. of Law (Dkt. 54-1) at 10.) The court concludes to the contrary. The Unenforceable Agreement (and any accompanying oral agreement to its same effect that was not committed to writing) cannot run afoul of the statute of frauds for this reason because it expressly contemplates the possibility of repayment within one year, or even immediate repayment. Paragraph 4 of the document provides, "At any time while not in default under this Agreement, Borrower may pay to Lender the outstanding balance then owing under

this Agreement without bonus or penalty." (Loan Agreement at 1.) While the exercise of such a repayment option may have been improbable, it was at least possible.

As the court discussed in denying summary judgment, however, Plaintiff's promissory estoppel claim can proceed only if it rests on the three individual promises Defendant allegedly made to Plaintiff to repay the Marital Loan and the subsequent loans of $87,000 and $185,000. The Marital Loan is in writing in the form of a promissory note, and thus does not violate the statute. Neither Defendant nor Plaintiff allege that the promises to repay the sums of $87,000 and $185,000 were accompanied by any prohibition for repayment within one year, and so they do not violate the statute for the reasons Defendant raises.

Nevertheless, the final provision of the statute of frauds requires an agreement to be in writing if it "is not to be completed before the end of a lifetime." G.O.L. § 5-701(a). This lifetime does not need to be that of either the promisor or promisee. Indeed, in *Meltzer v. Koenigsberg*, 302 N.Y. 523 (1951), the New York Court of Appeals found that a promise between sisters that could not be fulfilled until their father's death fell directly within this provision of New York's statute of frauds. Because neither the alleged promise to repay the $87,000 nor the $185,000 loans were in writing, and the parties' agreement, which they repeatedly discussed and which they carefully preserved and reflected in the Unenforceable Agreement, was not to be completed before the end of their father's lifetime, both promises fall within the statute of frauds.

The statute requires an additional step, however, before Plaintiff's equitable claims may be dismissed. Under New York law, "[a] claim for promissory estoppel may not be maintained under New York law where the alternative claim for breach of contract is barred by the Statute of Frauds, unless the circumstances make it unconscionable to deny the promise upon which the plaintiff

relied." *United Magazine Co. v. Murdoch Magazines Distrib.*, 146 F. Supp. 2d 385, 405 (S.D.N.Y. 2001). Reliance or expectations damages associated with non-performance of a contract do not amount to an "unconscionable injury." *Merex A.G. v. Fairchild Weston Sys.*, 29 F.3d 821, 826 (2nd Cir. 1994). Rather, an unconscionable injury is one in which the party protected by the statute of frauds,

> by inducing or permitting without remonstrance another party to the agreement to do acts, pursuant to and in reliance upon the agreement, to such an extent and so substantial in quality as to irremediably alter his situation and make the interposition of the statute against performance a fraud.

*Philo Smith & Co. v. Uslife Corp.*, 554 F.2d 34, 36 (2d Cir. 1977).

Plaintiff does not allege that she was induced or permitted to perform to such an extent and quality that her situation was irremediably altered. Thus, her injury is not unconscionable and her promissory estoppel claims are barred by the statute of frauds, except for the $149,700 Marital Loan which is in writing. Defendant's motion to dismiss Plaintiff's equitable claims as to the $87,000 and $185,000 sums, then, is GRANTED.

### Statute of Limitations

That leaves Defendant's remaining affirmative defense, the statute of limitations, now applicable only to the $147,000 Marital Loan.

In New York, "the statute of limitations for a promissory estoppel claim is six years and begins to run upon breach of the promise." *Baker v. Bank of America, N.A.*, 2016 WL 9409022 (S.D.N.Y. Oct. 31, 2016). Here, a New York Supreme Court found that on April 14, 2013, "the entire balance [of the Marital Loan] became due in full." (Ex. G (Dkt. 54-9) at 79.) However, the parties agreed

that Defendant would repay that sum from the estate of their fa-
ther. (Am. Compl. ¶ 21.) Therefore, the earliest the promise
could have been breached was upon his death in 2016, which is
well within the six-year limitations period. (Pl.'s 56.1 ¶ 59.) De-
fendant's motion to dismiss the remaining promissory estoppel
claim is therefore DENIED.

  b. *Unjust Enrichment*

  i.  <u>Motion to Dismiss</u>

To state a claim for unjust enrichment, a plaintiff must plausibly
allege that "(1) the other party was enriched, (2) at the other
party's expense, and (3) that it is against equity and good con-
science to permit the other party to retain what is sought to be
recovered." *Werner v. Selene Fin., LLC*, No. 17-CV-06514 (NSR),
2019 WL 1316465, at *9 (S.D.N.Y. Mar. 22, 2019). Such claims,
however, are only available "in unusual situations when, though
the defendant has not breached a contract nor committed a rec-
ognized tort, circumstances create an equitable obligation
running from the defendant to the plaintiff." *Id.* The New York
Court of Appeals has elaborated accordingly:

> The essential inquiry in any action for unjust enrichment
> or restitution is whether it is against equity and good
> conscience to permit the defendant to retain what is
> sought to be recovered. Such a claim is undoubtedly eq-
> uitable and depends upon broad considerations of
> equity and justice. Generally, courts will look to see if a
> benefit has been conferred on the defendant under mis-
> take of fact or law, if the benefit still remains with the
> defendant, if there has been otherwise a change of posi-
> tion by the defendant, and whether the defendant's
> conduct was tortious or fraudulent.

*Paramount Film Distrib. Corp. v. State*, 30 N.Y. 2d 415, 421
(1972).

Plaintiff seeks to apply this framework to Defendant in order to recover on a promise to repay a loan. Plaintiff argues that unjust enrichment has been employed by courts in the context of unpaid loans between businesses and individuals operating at arm's length in the marketplace. *See, e.g.*, *Spesinskis v. Feldman*, No. 19-CV-1562 (BMC), 2019 WL 3216553, at *3-4 (E.D.N.Y. 2019); *Maya NY, LLC v. Hagler*, 106 A.D.3d 583, 584-85 (1st Dep't 2013); *Gillon v. Traina*, 70 A.D.3d 1443, 1444 (4th Dep't 2010). But these cases merely show that a debtor-creditor relationship *does not preclude* an unjust enrichment claim. Even in such a context, unjust enrichment requires some extraordinary circumstance (usually a death or accident) or the blurring of corporate and personal identities. Those circumstances must have then led to a mistake of fact or law. Finally, an injustice must have resulted that a court sitting in equity can correct.

Plaintiff, however, does not allege that a benefit was conferred on the Defendant because of any mistake, whether of fact or law. Instead, she claims, citing cases involving agreements between corporations and investment banks, that "there is no such thing as free money. Having acknowledged that it received the funds, [Defendant] at some point had to pay them back." (Pl. Mem. of Law at 16.) Somehow Plaintiff ignores that, between sisters, there very often *is* such a thing as free money: gifts.

Moreover, Plaintiff fails to allege some sort of special circumstance of confusion or mistake that would lead the court to believe the funds were something other than either an intentional loan or a freely given gift. Indeed, in this case there has been such a substantial change in position by the Defendant in reliance upon the funds received from Plaintiff that, if anything, the strongest case in equity and good conscience would be to permit Defendant to keep them, rather than return them to Plaintiff. Defendant used one loan to purchase a home, another to settle her acrimonious divorce, and a third to extricate herself from an

otherwise crushing lawsuit that she could not have settled on her own. (Pl.'s 56.1 ¶¶ 17, 22.) The court declines to endorse Plaintiff's assertion that equity and good conscience so powerfully forbid her sister from retaining these benefits that an extraordinary equitable remedy, generally reserved for egregious frauds, should issue from this court.

The court can only conclude that if these funds were not extended as loans (as Plaintiff asserts), then they were given as gifts (as Defendant asserts). Either way: they were not mistakenly conferred under any extraordinary circumstance that might warrant an equitable intervention of the court to reverse an unjust enrichment.

Because the court finds that the Amended Complaint thus fails to state a claim for unjust enrichment, Defendant's motion to dismiss that count is GRANTED. The court need not reach Defendant's affirmative defenses or the alternative motion for summary judgment on this claim.

    *c.   Money Had and Received*

        i.   <u>Motion to Dismiss</u>

To state a claim for money had and received, a plaintiff must plausibly allege that "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Panix Promotions, Ltd. v. Lewis*, No. 01-CV-2709 (HB), 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002). Traditionally, the remedy has been available

> if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass. Further, such an action has been permitted where plaintiff has paid

24

> money by mistake, money has been collected for an ille-
> gal tax or assessment, or property is erroneously taken
> or withheld by a public official.

*Id.* at 2.

Plaintiff in this case does not allege oppression, imposition, ex-
tortion, deceit, trespass, mistake, coercion, erroneous
withholding, or any other comparable or analogous circumstance
which might place this case in the realm of money had and re-
ceived. Instead, Plaintiff alleges that Defendant promised to
repay several loans; that plaintiff intentionally and freely relied
upon those promises in extending the loans; and that Defendant
has not repaid them. That is an ordinary claim, not an extraordi-
nary one.

Like unjust enrichment, the doctrine of money had and received
is not a weapon of credit collection. *See United Republic Ins. Co.
v. Chase Manhattan Bank*, 168 F. Supp. 2d 8, 20 (N.D.N.Y.
2001) (finding that plaintiff had no possessory interest in money
that was a loan freely given to defendant who failed to repay).
Although the existence of a loan agreement between the parties
does not preclude a claim for money had and received, neither
does the bare receipt of money and lack of repayment justify one.
Something more must be present to distinguish such a transac-
tion from a gift and invite the equitable intervention of the court.
That something is missing here.

Defendant's motion to dismiss the money had received count is
therefore GRANTED. The court need not reach Defendant's af-
firmative defenses or the alternative motion for summary
judgment on the claim.

### III.  CONCLUSION

To summarize: On the reformation claim, Defendant's motion to
dismiss is DENIED. Defendant's motion for summary judgment

as to the full amount of the $414,300 "Unenforceable Agreement" is also DENIED.

Defendant's motions to dismiss the unjust enrichment and money had and received claims are both GRANTED.

Defendant's motions to dismiss the promissory estoppel claims as to the sums of $87,000 and $185,000 are GRANTED. The motion to dismiss the promissory estoppel claim for the $147,000 Marital Loan is DENIED. Defendant's motion for summary judgment on the promissory estoppel claims is DENIED in its entirety.

The following claims may therefore proceed to trial: reformation of the entire written loan agreement; and, in the alternative, promissory estoppel as to the $147,000 Marital Loan.

The parties are DIRECTED to contact Magistrate Judge Steven Tiscione to propose a pretrial order.

SO ORDERED.


Dated:     Brooklyn, New York
           July 12, 2022

                                      s/Nicholas G. Garaufis
                                      _____
                                      NICHOLAS G. GARAUFIS
                                      United States District Judge

26